UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HELENA CHEMICAL CO. | CIVIL ACTION NO. 14-0192 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LAVELLE WILLIAMSON | MAG. JUDGE KAREN L. HAYES |

RULING

This action was brought by Plaintiff Helena Chemical Co. ("Helena") against Defendant Lavelle Williamson ("Williamson") to recover amounts due for goods and services provided to Williamson under a Credit Sales and Services Agreement. Williamson filed a counterclaim asserting that Helena was negligent for selling him wet corn seed, which resulted in his decreased production, loss of higher contract price, and increased farming expenses.

Pending before the Court is Helena's Motion for Summary Judgment on Consequential Damages [Doc. No. 10]. Williamson filed a memorandum in opposition to the motion [Doc. No. 15]. Helena filed a reply memorandum [Doc. No. 20]. Finally, Williamson filed a sur-reply memorandum in opposition to the motion [Doc. No. 26].

For the following reasons, Helena's motion is DENIED.

**I.     FACTS AND BACKGROUND**

Williamson began farming in 2010. Prior to that time, he had worked in the oilfield industry, marked timber, and as a painter. He has a tenth grade education.

Until 2010, Williamson had never purchased seeds or chemicals for farming purposes. During his first year of farming, he sought to purchase goods and services from Helena on credit.

Helena presented him with a Credit Sales and Services Agreement ("the Agreement"), which he signed. [Doc. No. 1-2, Exh. A]. The terms were not discussed or explained to him.

Between 2010 and 2013, Williamson purchased seed, fertilizer, and chemicals from Helena under the Agreement. The Agreement was not superseded or cancelled at any time.

For the 2013 crop year, Helena provided certain goods and services to Williamson, including corn seed and soybeans and related products, for a total price of $79,188.50. After Helena's delivery, Williamson had difficulty getting the corn seed out of Helena's tender. He contacted Helena's sales representative, Paul McKinley, to complain about this issue, but proceeded with planting the corn seed.

Williamson's corn seed failed to germinate, and a sufficient stand of corn was not realized for the 2013 crop year. He avers that "it was determined" that Helena's corn seed was wet when it was delivered in Helena's tender.[1] [Doc. No. 16, Williamson Aff., ¶ 4]. According to Williamson, the wet corn seed absorbed more chemicals than it would normally, resulting in a loss of "at least eighty (80) bushels of corn per acre." [Doc. No. 16, Williamson Aff., ¶ 3]. Helena contends, however, that Williamson's corn crop failure was a result of his own improper application of fertilizer.[2]

Williamson made one payment to Helena, but has not made any further payments on his account, arguing that Helena is liable to him in neglience. Helena has filed the instant motion

---

[1] It is unclear how this was determined or by whom, but the Court accepts his statement for purposes of this motion. The Court assumes Williamson would be prepared to present evidence to support this claim at trial.

[2] The Court also accepts Helena's factual argument for the purpose of showing that Helena would contest Williamson's negligence counterclaim if the counterclaim were to proceed to trial.

seeking a ruling by the Court that Williamson cannot recover consequential damages based on the exclusion/limitations of remedies provision of the Agreement. Williamson opposes the motion.

The Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor*

*Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

### B. Consequential Damages

In his counterclaim, Williamson seeks to recover damages from Helena based on its alleged negligence, claiming that he suffered damages in the amount of $148,964.15 for decreased corn production, $64,439.16 for loss of a higher contract price, and $13,491.50 for increased farming expenses for the 2013 crop year.

Helena moves the Court for judgment as a matter of law that Williamson cannot recover on his counterclaim, arguing that the clear and unambiguous language of the Agreement prevents him from recovering consequential damages.

Williamson opposes Helena's motion and argues that the exclusion/limitations of remedy provision in the Agreement is unenforceable under Tennessee law.

The Agreement contains the following pertinent provisions:

> THE EXCLUSIVE REMEDY FOR ANY CAUSE OF ACTION BY OR ON BEHALF OF PURCHASER UNDER THIS STATEMENT AND RELATED TRANSACTION(S) IS A CLAIM FOR DAMAGES AND IN NO EVENT SHALL DAMAGES OR ANY OTHER RECOVERY OF ANY KIND AGAINST HELENA . . . EXCEED THE PRICE OF THE SPECIFIC GOODS OR SERVICES WHICH CAUSE THE ALLEGED LOSS, DAMAGE, INJURY OR OTHER CLAIM. NEITHER HELENA . . . SHALL BE LIABLE AND ANY AND ALL CLAIMS AGAINST HELENA . . . ARE WAIVED FOR SPECIAL, DIRECT OR CONSEQUENTIAL DAMAGES, OR EXPENSES, OF ANY NATURE INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR INCOME, CROP OR PROPERTY LOSS OR DAMAGE, LABOR CHARGES AND FREIGHT CHARGES, WHETHER OR NOT BASED ON HELENA'S, ITS OFFICERS', DIRECTORS', EMPLOYEES' AND/OR AFFILIATES' NEGLIGENCE, BREACH OF WARRANTY, STRICT LIABILITY IN TORT OR ANY OTHER CAUSE OF ACTION.
>
> . . .

THE FOREGOING CONDITIONS OF SALE AND LIMITATIONS OF WARRANTY, LIABILITY AND REMEDIES MAY BE VARIED OR WAIVED ONLY BY AGREEMENT IN WRITING SIGNED BY A DULY AUTHORIZED REPRESENTATIVE OF HELENA.

[Doc. No. 10-1, Aff. of Gary Yochum, Exh. 001, ¶¶ 11, 14].

The Agreement's choice of law clause provides that Tennessee law governs,[3] which the parties do not dispute.[4] Under Tennessee law, "[t]he interpretation of a contract is a matter of law." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Consequently, "[q]uestions of contract interpretation . . . are especially well-suited for resolution by summary judgment." *Ross Prods. Div. Abbott Labs. v. Tennessee*, No. M2006-01113-COA-R3-CV, 2007 Tenn. App. LEXIS 752, at *7 (Tenn. Ct. App. Dec. 5, 2007). "If the language [of a contract] is clear and unambiguous, the literal meaning controls the outcome of the dispute." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

As a preliminary argument, Helena asserts that the Court has already decided this issue in a previous case, *Dawson Farms, LLC v. BASF Corporation and Helena Chemical Company*, Civil Action No. 06-0737 (W.D. La.). In that case, Helena filed a motion for summary judgment, arguing that a 2002 Credit Sales and Services Agreement precluded Dawson Farms from recovering consequential damages. Dawson Farms opposed the motion, contending that subsequent agreements, not the Credit Sales and Services Agreement, were controlling. The Magistrate Judge issued a

---

[3] Helena is a Delaware corporation with its principal place of business in Tennessee.

[4] Louisiana law generally allows choice of law provisions. LA. CIV. CODE ANN. art 3540 ("issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."). Neither party contests the application of Tennessee law.

Report and Recommendation on the motion, which was adopted by the Court. In that Report, the Magistrate Judge determined that the Credit Sales and Services Agreement, which contained a limitations/exclusion of remedies provision, controlled and barred Dawson Farms' recovery of consequential damages from Helena.

At first blush, the Court's prior decision would seem to foreclose Williamson's arguments in this case. Certainly, the Court finds that the Agreement at issue in this case is clear and unambiguous and that it applies, generally, to the dispute between the parties. However, as Williamson points out, the parties in the previous case did not dispute the enforceability of the provisions of the Credit Sales and Services Agreement under Tennessee law; they disputed whether the 2002 agreement controlled. *Dawson Farms*, Civil Action No. 06-0737 [Doc. No. 117, p.6 n.5 ("Dawson Farms does not contend that the 2002 Agreement is ambiguous, opting instead to argue that it has been novated. **Neither does Dawson Farms contest that the provisions limiting Helena's liability are valid and enforceable under Tennessee law.** *See* La. Civ. Code Ann. Art. 3540 (Tennessee law could not control if it would lead to a result that violates Louisiana's public policy.).) (emphasis added)]; *see id.* at p. 7 ("It is also undisputed that [the Credit Sales and Service Agreement's] provisions are enforceable under Tennessee law.")]. Thus, the Court finds that it has not specifically addressed the issue presented by Williamson and will consider the substantive arguments under Tennessee law.[5]

Tennessee Code Annotated 47-2-719 provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages:

---

[5]Helena's Credit Sales and Services Agreement was amended in 2007, but neither party contends that there were changes affecting the issues in this case.

> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and **may limit or alter the measure of damages recoverable under this chapter**, **as by limiting the buyer's remedies to return of the goods and repayment of the price** or to repair and replacement of nonconforming goods or parts; and
>
> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) **Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chapters 1-9 of this title.**
>
> (3) Consequential damages may be limited or excluded **unless the limitation or exclusion is unconscionable.** Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

(emphasis added). The comments following the statute explain:

> 1. Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.
>
>    However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.
>
>    . . .
>
> 3. Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. The seller in all cases is free to disclaim

warranties in the manner provided in Section 2-316.

Tenn. Code Ann. 47-2-719 cmts. 1, 3. Thus, Tennessee permits the limitation of remedies unless circumstances causes the remedy to fail of its essential purpose. Specifically, commercial parties may limit or exclude consequential damages unless the limitation or exclusion is unconscionable.

The Court considers, first, whether the Agreement's clause excluding consequential damages is unconscionable. Whether a contract term is unconscionable is a question of law, and a presumption of permissible dealings exists between commercial parties. *See Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage*, , 709 F.2d 427, 435 & n. 12A (6th Cir. 1983); *see also Aquascene, Inc. v. Noritsu Am. Corp*, 831 F.Supp. 602, 604-05 (M.D. Tenn.1993); *Shepherd v. Weather Shield Mfg., Inc.*, 2000 WL 34411064, at *5 (Tenn. Ct. App. Aug. 21, 2000). "In contrast with failure of essential purpose, the determination of unconscionability focuses on the circumstances as they existed when the parties entered into the contract." *Baptist Memorial Hosp. v. Argo Const. Corp.*, 308 S.W.3d 337, 346 (Tenn. Ct. App. 2009).

The Tennessee Court of Appeals has discussed unconscionability in the commercial context:

> Is the limitation on consequential damages unconscionable? This is a question of law for the court in light of the commercial setting, purpose and effect of the provision. (Citation omitted.) Unconscionability may arise from a lack of meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). (Citation omitted.) In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other. (Citation omitted.) Where the parties possess equal bargaining power the courts are unlikely to find that their negotiations resulted in an unconscionable bargain, and terms that are common in the industry are generally not unconscionable. (Citation omitted.)

*Trinity Industries, Inc. v. McKinnon Bridge Company, Inc.*, 77 S.W.3d 159 (Tenn. Ct. App. 2001).

Although there are no Tennessee cases directly on point, Williamson has cited to the Court to nine cases in other state and federal jurisdictions which have addressed this issue and found that the exclusion or limitations of remedies provision was unconscionable.[6] In many of those cases, the seller or manufacturer held such a strong bargaining position that it could impose a provision on the farmer which deprived him of "virtually all protection." *Martin v. Joseph Harris Co.*, 767 F.2d 296, 301 (6th Cir. 1985) (internal quotation marks omitted) (quoting J. WHITE & R. SUMMERS, THE HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE, § 12-11, at 477 (2d ed. 1980)).[7]

---

[6] *Mullis v. Speight Seed Farms, Inc.,* 505 S.E. 2d 818 (Ga. 1998) (purchaser of tobacco seeds for farming could not be held to warranty and limitation of remedies provisions, which were held to be unconscionable and unenforceable under the facts of the case); *Lutz Farms v. Asgrow Seed Company,* 948 F.2d 638 (10th Cir. 1991) (applying Colorado law, district court did not err in refusing to limit buyer's recovery to purchase price of onion seeds because the attempted exclusion of consequential damages under a limitations of remedies provision was unconscionable); *Latimer v. William Mueller & Son, Inc.,* 386 N.W. 2d 618 (Mich. Ct. App. 1986) (limiting buyer to recovery of the purchase price of bean seeds would lead to an unconscionable result); *Martin v. Joseph Harris Co.,* 767 F.2d 296 (6th Cir. 1985) (in a case involving the purchase of cabbage seed by two "uncounseled laymen" commercial farmers, the Sixth Circuit affirmed the trial court's finding under Michigan law that a disclaimer and limitations clause was unconscionable); *Schmaltz v. Nissen,* 431 N.W. 2d 657 (S.D. Sup. Ct. 1988) (limitations provision preventing buyer of sorghum seeds from recovering consequential damages was "oppressive" and "declared unconscionable"); *Hansen v. Funk Seeds It'l,* 373 N.W. 2d 30 (S.D. 1985) (provision limiting farmer to refund of his corn seed price was unconscionable); *Mallory v. Conida Warehouses,* 350 N.W. 2d 825 (Mich. Ct. App. 1984) (trial court was not clearly erroneous in finding a limitations of remedies provision was unconscionable when the purchaser would have been limited to a return of the purchase price of kidney bean seeds); *Dessert Seed Company v. Drew Farmers Supply, Inc.,* 248 Ark. 858, 454 S.W. 2d 307, 311 (Ark. 1970) ("To hold Service Seed is limited to a recovery of the purchase price of the seed in the face of established negligence would be unreasonable, unconscionable, and against sound public policy."); *Nomo AgroIndustrial, SA DE CV v. Enza Zaden North America, Inc.,* 492 F.Supp.2d 1175 (D. Ariz. 2007) (purchaser of tomato seeds not barred from recovery by limitations of damages clause where clause failed of its essential purpose, was unconscionable, and was unenforceable under the circumstances).

[7] In a later decision, the Sixth Circuit considered a case by a grain buyer against a feed corn business and its president, in his individual capacity, under grain delivery contracts. The Sixth Circuit declined to find a binding arbitration provision in an agreement unconscionable, distinguishing *Martin*, explaining that in *Martin*

9

In *Hanson v. Funk Seeds, Int'l*, 373 N.W.2d 30 (S.D. Sup. Ct. 1985), the Supreme Court of South Dakota reviewed and upheld a trial court's determination that a corn seed supplier could not enforce a remedy provision limiting the farmer/buyer to a refund of the corn seed price because the provision was unconscionable. The *Hanson* Court explained:

> Appellee Hanson, like most farmers, was not in a position to bargain for more favorable contract terms, nor was he able to test the seed before the purchase. A crop failure is inevitable if the corn seed is ineffective and to enforce the provisions here in question, which would only allow the return of the purchase price, would leave appellee without any substantial recourse for his loss. In essence, appellee would be left without a remedy for another's breach. *Cf. Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241, 242 (S.D.1984). The trial court's determination that these provisions were unconscionable is therefore not in error and we uphold its decision in this regard.

---

> we held unconscionable a disclaimer of warranty and limitation of liability clause in a sales contract between a farmer and a national seed producer. (A similar clause was used by the seed producer's competitors.) Therein, we relied in part on the disparity in relative strength and the national producer's failure to inform the farmer that the clause altered significant statutory rights. However, in addition to giving "considerable weight" to the district court's opinion that Michigan law would not permit the disclaimer to be enforced (something which we no longer do, *see In re Grand Jury ( Doe) v. United States*, 932 F.2d 481, 487 (6th Cir.1991)), we made clear that we were relying on the unique facts of the case: the producer discontinued a seed treatment procedure that it had been using for 26 years to prevent a crop disease called "black leg." The sole notice of the change was provided in the corner of one page in a catalog. A significant portion of the farmer's crop was destroyed by the disease. In reaching our decision, we noted that the defect was latent, that the seed producer could have prevented it, and that the farmers had no control over it. *Martin* has no applicability to the present dispute.

*Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, (6th Cir. 1998). Even if the Sixth Circuit no longer gives considerable weight to a district court decision, its analysis in *Martin* is still instructive in this case.

*Id.* at 35; *cf Jones v. Asgrow Seed Co.*, 749 F.Supp. 836 (N.D. Ohio 1990) (limitation of liability not unconscionable where limitation was conspicuous, buyer was experienced commercial tomato seed buyer, and seed contained undiscoverable latent defect); *Nunes Turfgrass v. Vaughan–Jacklin Seed Co.*, 200 Cal.App.3d 1518, 246 Cal.Rptr. 823 (1988) (seller's limitation of consequential damages clause in sales confirmation for sale of commercial sod seed mix was not unconscionable where buyer and seller were large commercial entities familiar with sod seed business and had done business together for 20 years).

In this case, at the time the Agreement was entered, Williamson was a first-time farmer with a tenth grade education and no apparent experience in the agricultural industry. He needed the goods and services Helena provided to begin his farming career. Helena then presented him with an agreement which had to be signed if he wished to purchase from Helena. Although the Agreement was not *prima facie* unconscionable under Tennessee law[8] and commercial parties are presumed to have engaged in permissible dealings, this simply was not a commercial transaction between two parties on equal footing. *See Aquascene*, 831 F.Supp. at 604 (The state legislature "intended to allow merchants to allocate risks when making business contracts," but a provision may be invalidated "where one party is overwhelmed."). Williamson was in no position to bargain and thus signed an Agreement which left him without recourse, even if Helena's action resulted in substantial damages

---

[8]Tennessee Code Annotated 47-2-719(3) provides that "[l]imitations of consequential damages for injury to the person in the case of consumer goods is **prima facie unconscionable** but limitation of damages where the loss is commercial is not." Helena reads this portion of the statute to state the limitations of damages in the commercial context is not unconscionable. The Court disagrees with Helena's interpretation. Subsection (3) certainly assigns "greater protection under the provision against unconscionability" for consumers, but it does not permit unconscionable limitations or exclusion of damages in the commercial context without review by the court. *Aquascene,* 831 F.Supp. at 604.

to him. Under these circumstances and finding the decisions of every other court to consider this issue persuasive, the Court finds that the exclusion/limitations of remedies provision is unconscionable and unenforceable.

Further, even if the provision survived an unconscionability review, the Court also finds that the remedy provision fails of its essential purpose. "Failure of essential purpose as codified in Tennessee Code Annotated § 47–2–719 'is concerned with the essential purpose of the remedy chosen by the parties, not with the essential purpose of the code or of contract law, or of justice and/or equity.'" *Baptist Memorial Hosp.*, 308 S.W.2d at 346 (quoting *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 28 (Tenn. Ct. App.1993) (citing 1 JAMES J. WHITE & ROBERT S. SUMMERS, Uniform Commercial Code § 12–10 (3d ed.)). In contrast to the unconscionability provisions, this code provision "'is concerned only with novel circumstances not contemplated by the parties and does not contemplate agreements arguably oppressive at their inception.'" *Id.* The Tennessee Court of Appeals has explained further:

> What then are "novel circumstances not contemplated by the parties" that would cause a limited contractual remedy to fail of its essential purpose? White and Summers note that
>
>> [t]he most frequent application of 2–719(2) occurs when under a limited 'repair and replacement' remedy, the seller is unwilling or unable to repair the defective goods within a reasonable period of time. Thus the limited remedy fails of its essential purpose, i.e., fails to cure the defect. A remedy also fails when the seller is willing and able to repair, but the repairs cannot be done. This might happen because the goods have been destroyed.
>
> WHITE & SUMMERS 5th ed., supra, § 12–10. In this case, however, the contractual remedy included refund of the purchase price as well as repair and replacement. This Court has previously held that "[u]nder Tennessee law, the availability of a refund remedy will prevent a repair remedy from failing of its essential purpose." *Arcata Graphics Co.*, 874 S.W.2d at 29 (citing *Int'l Talent Group v. Copyright Mgmt.*, 769

> S.W.2d 217 (Tenn.Ct.App.1988)). Therefore, the *Arcata* Court held, "a warranty providing for repair, replacement or refund provides a minimum adequate remedy that cannot fail of its essential purpose." *Id*. at 30.

*Id.* at 346.

In this case, a repair and replace remedy was not included in the Agreement and obviously would have served no purpose. The Agreement does not use the term "refund," but does provide that "damages or any other recovery of any kind against Helena" may not "exceed the price of the specific goods or services which cause the alleged loss, damage, injury or other claim." [Doc. No. 10, Yochum Aff., Exh.001]. Thus, under the Agreement, Williamson can recover the cost of the corn seed which allegedly caused the loss, i.e., a refund. Typically, pursuant to Tennessee law, a refund is a minimum adequate remedy.

However, in this case, the refund of the purchase price is a "totally inadequate" remedy in the "agricultural context." *Nomo Agroindusrial SA DE CV v. Enza Zaden North Am.*, 492 F. Supp.2d 1175, 1181 (D. Ariz. 2007). "The true value of the seeds only comes from the crop yielded which is preceded by considerable time and cost expended by the farmer. A farmer's lost growing season and the accompanying loss of expected profits due to the defective seeds clearly is not compensated by simply replacing or refunding the price of the defective seeds." *Id.* at 1181. Williamson suffered the loss, not of corn seed, but of his corn crop. Thus, this Court, like the other courts who have considered the issue, finds that the exclusion/limitations of remedies provision in the Agreement fails of its essential purpose. If he can prove Helena's negligence at trial, then Williamson is not prevented by the Agreement from seeking consequential damages.

### III. CONCLUSION

For the foregoing reasons, Helena's Motion for Summary Judgment on Consequential

Damages [Doc. No. 10] is DENIED. If Williamson prevails on his counterclaim, he may seek to recover consequential damages from Helena.

MONROE, LOUISIANA, this 23rd day of March, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE